IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NUMBER: 1:18-cv-359

| | | |
|---|---|---|
| John Henry Reynolds, | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| | ) | |
| vs. | ) | <u>COMPLAINT</u> |
| | ) | *(Jury Trial Requested)* |
| | ) | |
| Scott Pruitt, Administrator, United States | ) | |
| Environmental Protection Agency, in his | ) | |
| Official Capacity, | ) | |
| *Defendant*. | ) | |

1.

This action is brought by a citizen of Guilford County, Greensboro, North Carolina, for damages based upon discriminating and retaliating against Plaintiff for exercising his rights under Title VII of the Civil Rights Act of 1964, as amended in 1991, the Rehabilitation Act of 1973 and Title I of the Americans with Disabilities Act of 1990, as amended by the ADAAA of 2008 with respect to compensation, terms, conditions, and privileges of employment in ways which deprive Plaintiff of equal employment opportunities and otherwise adversely effect Plaintiff's status as an employee.

2.

Plaintiff, John Henry Reynolds, is a citizen of the United States and the State of North Carolina and resides in Guilford County, North Carolina.

3.

The unlawful practices alleged herein were committed within the State of North Carolina; specifically in Guilford County, North Carolina.

1

4.

Defendant is an agency of the United States of America with the mission to protect human health and the environment.

5.

Defendant is an employer engaged in an industry that affects commerce and employs more than twenty (20) employees. All conditions precedent to jurisdiction have occurred or been complied with, to wit:

- On or about June 16, 2017, the Plaintiff timely submitted a complaint of discrimination and retaliation against the Defendant to the US Equal Employment Opportunity Commission.

- On or about December 21, 2017, the US EPA mailed the Plaintiff a "Final Agency Decision."

- On or about February 5, 2018, the Plaintiff received a copy of the "Final Agency Decision."

6.

At all times relevant herein, the Plaintiff was employed as a Management Analyst (GS-13) in the Office of Enforcement Compliance Assurance (OECA), Office of Administration and Policy (OAP), Administrative Management Division (AMD). At all times while Plaintiff was employed in this position, he generally worked ten (10) hours per day, four (4) days per week.

7.

The Plaintiff's first line supervisor was Deborah Caution and Mark Badalamente, Director OECA, OAP was his second line supervisor. At all times alleged herein, Caution and Badalamente were acting as agents and employees of the Defendant.

8.

The Plaintiff is a disabled Veteran hired under a disability authority. The Plaintiff suffers from several medical conditions, including anxiety, depression, limited motion in both arms, back pain, hiatal hernia, second degree burns, neuralgia and scars.

9.

The Plaintiff contends that Caution and Badalamente were aware of his medical conditions, including mental health issues, at all times relevant herein.

10.

The Plaintiff contends that he worked under a telework agreement at all times relevant herein. Further, the Plaintiff worked in the Washington, DC location two (2) days per week and maintained a residence in Greensboro, North Carolina.

11.

Pursuant to US EPA policy, the official worksite for an employee covered by a telework agreement is the location of the regular worksite for the employee's position while recovering from a temporary illness, as long as the employee is scheduled to report physically at least twice each biweekly pay period on a regular and recurring basis to that regular worksite. Thus, the Plaintiff's official worksite location was Washington, DC.

12.

On or about December 3, 2014, the Plaintiff submitted several requests for a reasonable accommodation to Caution. The reasonable accommodation request consisted of requesting full-time telework from his home located in Greensboro, North Carolina.

3

13.

The Plaintiff requested to telework because he and his physician determined that he suffered a temporary illness and that during his treatment period, he needed to work in an atmosphere that allowed him to perform the essential functions of his job without social interaction.

14.

On approximately January 2, 2015, the Plaintiff produced a physician's note from his treating staff physician located at the VA Outpatient Clinic supporting the Plaintiff's request for a reasonable accommodation to telework full-time. The physician's note included information that the Plaintiff suffered from anxiety, depression, limited motion in both arms, back pain, hiatal hernia, second degree burns, neuralgia and scars associated 100% with his service connection disability rating for neurosis. Further, the Plaintiff's physician confirmed that he had reviewed the Plaintiff's work schedule and job functions; and confirmed that the Plaintiff could perform the essential functions of his job with the aforementioned reasonable accommodation. Further, the Plaintiff's physician indicated that the aforementioned reasonable accommodation would decrease or eliminate the Plaintiff's stress and therefore would improve his work efficiency and job performance.

15.

The Plaintiff contends that after producing the January 2015 physician's note to Caution, she denied his request and stated that she would terminate his temporary medical flexiplace arrangement on January 5, 2015. Furthermore, she required him to produce additional physician's notes from different physicians. Further, the Plaintiff contends that each note he submitted to Caution, specifically his initial physician's note, was complete and provided details regarding his request for accommodation, and also had sufficient information regarding the

4

medical condition upon which his request was based. Notwithstanding, Caution extended the process in an effort to delay and negatively affect his mental health.

16.

The Plaintiff contends that in January, 2015, Caution also changed his lunch hour from one (1) hour to thirty (30) minutes without justification. Plaintiff generally used his one (1) hour lunch session to participate in physical therapy for thirty (30) minutes. Further, the Plaintiff had generally had this lunch schedule for several years prior to his request for a reasonable accommodation.

17.

On approximately April 17, 2015, the Plaintiff submitted a second physician's note to Caution confirming that the Plaintiff's job description and symptoms had been reviewed; and confirmed and supported the Plaintiff's request for a reasonable accommodation to telework from home full-time.

18.

Notwithstanding, on approximately April 23, 2015, Caution emailed the Plaintiff demanding additional medical documentation regarding his request allegedly because of the undue burden the Plaintiff's request placed on his co-workers. In addition, even though Caution had been advised not to share the Plaintiff's confidential medical information with non-essential personnel pursuant to the Privacy Act and had been instructed specifically with whom any documentation would be shared regarding the Plaintiff's request for a reasonable accommodation, she intentionally (or with reckless disregard for the Plaintiff's rights) included non-essential personnel on emails and in conversations regarding the Plaintiff's confidential medical

5

information, as well as placing the Plaintiff's confidential medical information on a stored shared drive that was accessible to non-essential personnel.

19.

The Plaintiff immediately responded to Caution's email complaining that he felt harassed by her demand as he had produced more than sufficient documentation in support of his request for a reasonable accommodation to telework full-time. The Plaintiff also expressed his dismay, disappointment, betrayal and frustration with Caution exposing his confidential medical information with non-essential personnel in violation of the Privacy Act. Further, the Plaintiff contends that because Caution had placed undue and unwarranted demands for him to produce medical documentation on a timeline she determined, he had incurred unnecessary out of pocket medical expenses.

20.

Thereafter, the Plaintiff wrote a letter to his Congressional Representative, Senator Richard Burr, citing disability discrimination in the workplace at the US EPA under Caution's supervision. In addition, the Plaintiff complained to the Reasonable Accommodations Coordinator that he was being subjected to disability discrimination and harassment, as well as retaliation by Caution.

21.

Notwithstanding, on approximately May 5, 2015, the Plaintiff submitted a third physician's note confirming that the Plaintiff's job description and symptoms had been reviewed; and confirmed and supported the Plaintiff's request for a reasonable accommodation to telework from home full-time.

22.

The Plaintiff contends that prior to requesting a reasonable accommodation and prior to writing Senator Burr, he worked a four (4) day, ten (10) hours per day work schedule in order to attend weekly mental health appointments with his regular physician at the VA on the fifth (5th) workday of the week. This had been the Plaintiff's normal work schedule for several years prior to May, 2015.

23.

On approximately May 11, 2015, Caution informed the Plaintiff that she would be changing his work schedule from a four (4) day work week to a five (5) day work week, working eight (8) hours per day. As a result of the change in schedule, the Plaintiff could not get needed care on a regular basis which ultimately lengthened his recovery time. Further, it effected his ability to return to a normal work schedule and work performance. Further, it increased his anxiety level and depression.

24.

The Plaintiff contends that Caution was aware that he had written Senator Burr regarding discrimination in the workplace because on June 10, 2015, an employee/agent of the Defendant wrote the Honorable Richard Burr a letter acknowledging the Plaintiff's request for accommodation and indicating that the Plaintiff's request for a reasonable accommodation to telework full-time from Greensboro, North Carolina had been approved on May 11, 2015.

25.

Because of the complaint submitted to Senator Burr and the Reasonable Accommodations Coordinator, the Plaintiff contends that Caution retaliated against him by changing his locality

pay on August 20, 2015 in violation of US EPA policy regarding temporary telework arrangements.

26.

Pursuant to Temporary Telework Arrangements, an agency may designate the location of the regular worksite as the official worksite for an employee who teleworks on a regular basis at an alternative worksite …for recovery from an injury or medical condition.

27.

The Plaintiff contends that as a result in the change of locality, his pay was decreased by approximately $11,000.00 annually.

28.

The Plaintiff contends that prior to his request for a reasonable accommodation to telework from home and prior to engaging in protected activity by complaining to the Reasonable Accommodations Coordinator and by writing Senator Burr to complain of disability discrimination and retaliation at the US EPA, he had been evaluated as fully successful in his position with the Defendant.

29.

Title I of the ADA, and as amended by the ADAAA in 2008, prohibits an employer from treating an applicant or employee unfavorably in all aspects of employment -- including hiring, promotions, job assignments, training, termination, and any other terms, conditions, and privileges of employment -- because he has a disability, a history of having a disability, or because the employer regards him as having a disability. The ADAAA also limits the medical information employers may obtain and prohibits disability-based harassment and retaliation.

30.

Pursuant to the ADAAA, an employer is required to make a reasonable accommodation to the known disability of a qualified applicant or employee if it would not impose an "undue hardship" on the operation of the employer's business. Reasonable accommodations are adjustments or modifications provided by an employer to enable people with disabilities to enjoy equal employment opportunities.

31.

The ADAAA defines an "undue hardship" as an action requiring significant difficulty or expense when considered in light of factors such as an employer's size, financial resources, and the nature and structure of its operation.

32.

The Plaintiff contends that he engaged in, or was engaging in an activity protected under federal law, that is opposing disability discrimination and harassment in the workplace by an agent of the employer, when he a) provided a statement to his immediate supervisor, Caution, alleging that she was violating the law; b) communicated with the Reasonable Accommodations Coordinator for the Defendant about harassment and retaliation against him by Caution; and, c) filed a complaint of disability discrimination and harassment with his congressman, Senator Richard Burr.

33.

The Plaintiff contends that the employer subjected him to an adverse employment action, that is change in locality pay, improper disclosure of his confidential medical information and other benefits; and, he was subjected to the adverse employment action because of his participation in protected activity and his opposition to disability discrimination and harassment in the workplace.

34.

The Plaintiff contends that but for his participation in protected activity, he would not have had a change in locality pay and lost other employment benefits.

35.

The Plaintiff contends that there is a causal connection between his engaging in protected activity, his opposition to disability discrimination and harassment in the workplace and his loss of employment benefits, including the change in locality pay. Hence, there is a causal connection between the protected activity and the adverse employment action.

36.

The Plaintiff contends that once he opposed illegal practices within the Defendant Agency he was shunned, chastised, harassed, and his benefits were decreased.

37.

The Plaintiff contends that the Defendant acted with reckless indifference to his constitutional and statutory rights to freedom from discrimination and retaliation in the workplace and caused him to suffer pecuniary damages associated with lost wages, and non-pecuniary damages associated with personal illness, physical sickness and emotional distress.

38.

The Plaintiff contends that he suffers from a disability as defined in the "ADA" and "ADAAA" and is a "qualified individual with a disability which substantially limits a major life activity" as defined in Title I of the ADA and ADAAA. The Plaintiff contends that any restrictions he has been placed under by a medical doctor did not affect his ability to perform the essential duties of his position.

39.

The Plaintiff contends that the Defendant did not have a legitimate business reason for failing to accommodate his disability. Further, the Plaintiff contends that an accommodation would not have caused an undue burden on the Agency, its staff, its resources or otherwise.

40.

The Plaintiff further contends that because of his loss of benefits, including the change in locality pay, he lost money and suffered significant physical pain and personal sickness.

41.

The Plaintiff's claims of the violation of the "ADA", "ADAAA", the Rehabilitation Act of 1973 and Title VII arise from the above allegations of disability discrimination, harassment and retaliation.

42.

The Plaintiff contends that the Defendant was aware that it was violating the law by treating him in the manner alleged herein but did so anyway. The Plaintiff contends that the aforementioned acts of the Defendant constitute a willful violation of the ADA and ADAAA.

43.

All supervisors and co-workers were, at all times herein, working within the course and scope of their employment and in furtherance of the employer's business. Further, pursuant to the doctrine of respondent superior, the Defendant is vicariously liable for acts herein alleged against those co-workers and supervisors.  Alternatively, the acts of the aforementioned employees may not have been within the scope of their employment. Plaintiff alleges that the employer remains liable for its negligent supervision and retention of those employees.

44.

The Plaintiff further contends that the Defendant, by and through its agents, acted with reckless

indifference to his constitutional and statutory right to work in an environment free from

discrimination, harassment and retaliation.


COUNT ONE

The Defendant is liable to the Plaintiff for disability discrimination and harassment in violation

of Title I of the Americans with Disabilities Act ("ADA") of 1990, as amended by the ADAAA

in 2008, the Rehabilitation Act of 1973 and Title VII of the Civil Rights Act of 1964, as

amended in 1991.

COUNT TWO

The Defendant is liable to the Plaintiff for retaliation in violation of Title I of the Americans with

Disabilities Act ("ADA") of 1990, as amended by the ADAAA in 2008, the Rehabilitation Act

of 1973 and Title VII of the Civil Rights Act of 1964, as amended in 1991.


WHEREFORE, Plaintiff prays the Court that it:

1.     Award Plaintiff compensatory damages for pecuniary losses, emotional pain, physical

       illness, personal sickness and mental anguish, together with attorneys' fees and the costs

       and disbursements of this action in excess of $25,000.00;

2.     Grant Plaintiff a jury trial on all issues of fact, and;

3.     Grant such other relief as may be just and proper.


This the 2nd day of May, 2018.

GRAY NEWELL THOMAS, LLP

BY:     /s/ Angela Gray
        Angela Newell Gray
        7 Corporate Center Court, Suite B
        Greensboro, NC  27408
        Telephone:     (336) 285-8151
        Facsimile:     (336) 458-9359
        Email:         angela@graynewell.com
        *Attorney for Plaintiff*
        N.C. Bar #21006